IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-805 |
| | ) | |
| v. | ) | Judge David Stewart Cercone |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| ALLEN D. MCCLYMONDS, et al., | ) | |
| | ) | Doc. Nos. 11 & 13 |
| Defendants. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

**I.  RECOMMENDATION**

It is respectfully recommended that the Motion for Judgment on the Pleadings filed by Plaintiff, Allstate Insurance Company (Doc. No. 11), be granted, and the Motion for Judgment on the Pleadings filed by Defendants, Allen D. McClymonds and Selena McClymonds (Doc. No. 13), be denied.

**II.  REPORT**

Currently before the Court for disposition are cross motions for judgment on the pleadings. Plaintiff, Allstate Insurance Company ("Allstate"),  instituted this declaratory judgment action on June 16, 2006, against Defendants, Allen D. McClymonds and Selena McClymonds, its insureds (collectively, the "McClymonds" or the "Insureds"), as well as against Defendants, Alex Wayne Krauchak, Pamela S. Krauchak, John Baranchak, Dolores Baranchak, and JS Inc., d/b/a J's Bar (collectively, the "remaining Defendants"), seeking a declaration as to the rights and obligations of the parties under a home owners insurance policy.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).  Venue in this District is proper under 28 U.S.C. §

1391(a) as all of the Defendants reside in this judicial district.

The cross motions present two issues for the Court's adjudication: (1) Whether there was an "occurrence" under the Allstate homeowner's policy which is required to trigger coverage; and (2) whether the exclusion for intentional acts applies.  For the reasons set forth below, the Court finds that the facts alleged in the complaint and amended complaint in the underlying action fail to show that the alleged injuries resulted from an "occurrence" under the Policy.  Additionally, the Court finds the exclusion for intentional acts applies to bar coverage.  Accordingly, the Court concludes that Allstate does not have a duty to defend or indemnify the McClymonds, and therefore, recommends that Allstate's motion for judgment on the pleadings be granted and the McClymonds' motion for judgment on the pleadings be denied.

### A.    Motion for Judgment on the Pleadings - Standard of Review

To succeed on a motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c), the moving party must clearly show that "there are no material issues of fact, and he is entitled to judgment as a matter of law."  *Sikirica v. Nationwide Ins. Co.,* 416 F.3d 214, 220 (3d Cir. 2005) (citing *Soc'y Hill Civic Ass'n v. Harris,* 632 F.2d 1045, 1054 (3d Cir. 1980)).  In ruling on a motion for judgment on the pleadings, the Court "must view the facts presented in the pleadings and inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* (citing same).

### B.    Facts

The relevant facts are not in dispute.  At all relevant times, the McClymonds maintained a Deluxe Homeowner's Policy of Insurance with Allstate at policy number 01-714-424 (the "Policy"), which included a personal liability limit of $ 100,000.00.  The McClymonds filed a  claim under

the Policy for personal liability arising out of an incident that occurred on or about January 18, 2003 involving the McClymonds and the remaining Defendants.  (Compl. ¶¶ 6-8; Ex. A to Compl.)  The McClymonds have requested that Allstate provide them with the costs of defense and indemnification as a result of litigation filed against them arising out of the January 18, 2003 incident.  (Compl. ¶ 12.)

The litigation arising out of the January 18, 2003 incident was filed against the McClymonds and the remaining Defendants in the Court of Common Pleas of Butler County, Pennsylvania on January 18, 2005 (the "underlying action"), by Alex Wayne Krauchak and Pamela S. Krauchak (collectively the "Krauchaks"), for injuries they allegedly sustained as a result of a fight in or near J's Bar in Butler County, Pennsylvania on January 18, 2003.[1]  (Compl. ¶ 8.)  The original complaint filed in the underlying action ("Underlying Complaint") contains separate counts for assault and battery against Allen McClymonds and separate counts for assault and battery against Selena McClymonds.[2]  (Underlying Compl., attached as Ex. B to Compl. in this dec. action.)  The factual allegations supporting these counts aver that Alex Krauchak was viciously attacked by the McClymonds inside the premises and in the parking lot of J's Bar.  (Underlying Compl. ¶¶ 7-8.)  While inside J's Bar, Allen McClymonds is alleged to have instigated a pushing and shoving match with Alex Krauchak, which escalated into punches being thrown.  (*Id.* at ¶ 9.)    The skirmish

---

[1]Although the original complaint in the underlying action names the remaining Defendants, none of the counts in that complaint are against any of the remaining Defendants.

[2]Allstate asserts in its Complaint in this declaratory judgment action that it believes Defendant Allen D. McClymonds was charged with the crimes of aggravated assault and simple assault and pled guilty to a crime for the conduct at issue in the underlying action.  (Compl. ¶ 15.)  The McClymonds filed an Answer to the Complaint denying this allegation.  (Answer, ¶ 3.)

between Messrs. McClymonds and Krauchak spilled into the parking lot, where both men were engaged on the ground.  (*Id.* at ¶ 10.)  During this engagement, Selena McClymonds is alleged to have jumped on the back of Mr. Krauchak and started pulling his hair, while Mr. McClymonds allegedly disengaged from Mr. Krauchak, stood up, and kicked Mr. Krauchak in the head at least twice with a steel towed boot, rendering him unconscious.  (*Id.* at ¶¶ 11-12.)  The Krauchaks further allege that after Mr. Krauchak was rendered unconscious, the McClymonds continued their assault on him, resulting in serious injuries necessitating hospitalization.  (*Id.* at ¶ 13.)   In addition, the Krauchaks allege that the McClymonds' intentionally assaulted and intentionally committed battery on Mr. Krauchak, that said actions were "intentional, malicious and outrageous."  (Underlying Compl. ¶¶ 19, 22, 25-26, 31, 36, 39, 42-43, 48.)

Subsequently, on January 13, 2006, the Krauchaks filed an amended complaint in the underlying action ("Underlying Amended Complaint"), which incorporated by reference all of the allegations contained in the original complaint, and added Counts V through XII.  (Underlying Am. Compl., attached as Ex. B to Compl. in this dec. action.)   Counts V and VI in the Underlying Amended Complaint are entitled "Negligent and Intentional Misconduct" against Alex and Selena McClymonds, respectively.  In support of these claims, the Krauchaks allege that their injuries were a direct or proximate result of the negligence, carelessness, recklessness, willful and wanton misconduct of Allen and Selena McClymonds, in particular, by intentionally striking Mr. Krauchak; by assisting, encouraging and/or conspiring with another person to strike and/or harm Mr. Krauchak; and by failing to recognize the right and safety of Mr. Krauchak, thereby creating a high degree of risk of physical harm to him.  (Underlying Am. Compl. ¶¶ 51, 58.)  The Krauchaks further allege that the conduct of the McClymonds as alleged in paragraphs 51 and 58 was "intentional, malicious,

wanton and constitute[s] a reckless indifference to the interest of [Mr.] Krauchak and constituted extreme and outrageous misconduct, " and consequently, request punitive damages in addition to compensatory damages.  (Underlying Am. Compl. ¶¶ 52, 55, 59, 62.)  Mrs. Krauchak further claims that as a result of the physical assault perpetuated by the McClymonds, she has  sustained loss of consortium damages.  (Underlying Am. Compl. ¶¶ 55, 63.)

Counts VII and VIII of the Underlying Amended Complaint involve a claim of intentional infliction of emotional distress against Allen and Selena McClymonds, respectively.  In particular, the McClymonds are alleged to have acted intentionally and recklessly in their extreme and outrageous conduct which created an extreme fear and harm to Mr. Krauchak by the threat and subsequent striking of his person.  (Underlying Am. Compl. ¶¶ 65, 71.)  Counts VII and VIII further allege that the McClymonds caused numerous injuries to Alex Krauchak as a result of their negligence, carelessness, recklessness, willful and wanton misconduct.  (Underlying Am. Compl. ¶¶ 66, 72.)  The Krauchaks repeat the same allegations contained in Counts V and VI with regard to their request for punitive damages, and Mrs. Krauchak's damages for loss of consortium. (Underlying Am. Compl. ¶ ¶ 68-69, 74-75.)[3]

C.    The Policy

The relevant portions of the Policy are set forth in Section II–Family Liability and Guest Medical Protection**,** Coverage X, Family Liability Protection, beginning on page 21 of the Policy:

---

[3]The remaining counts of the Underlying Amended Complaint, counts IX through XII, are asserted against the remaining Defendants, J's Bar, JS' Inc., John Baranchak, and Dolores Baranchak.  (Underlying Am. Compl. ¶¶ 76-131.)

**Losses We Cover Under Coverage X:**
Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an occurrence to which this policy applies, and is covered by this part of the policy.

\* \* \*

**Losses We Do Not Cover Under Coverage X:**
1.  We do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person.** This exclusion applies even if:

    a)  such **insured person** lacks the mental capacity to govern his or her conduct;
    b)  such **bodily injury** or **property damage** is of a different kind or degree than that intended or reasonably expected; or
    c)  such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

    This exclusion applies regardless of whether or not such insured person is actually charged with, or convicted of a crime.

(Ex. A to Compl., p. 21.)   In addition, the Insuring Agreement of the Policy provides that "the terms of this policy impose joint obligations on persons defined as an **insured person.** This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**." (*Id.* at 4.)

The Policy also provides the following definitions:

3.  **"Insured Person(s)"**–means **you** and, if a resident of **your** household:
    a)  any relative; and
    b)  any dependent person in **your** care.

\*   \*   \*

6

9.   **"Occurrence"**–means accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage.**

(*Id.* at 2-3.)

**D.    Procedural History**

Allstate does not believe that it owes either a duty to defend or indemnify to the McClymonds for any liability arising from the January 18, 2003 incident, and therefore, instituted this declaratory judgment action seeking a declaration that it does not owe (1) liability coverage to the McClymonds under the Policy for any injuries or damages alleged in the complaints in the underlying action, or (2) a duty to defend the McClymonds in the underlying action.  (Compl. ¶ 19(a) & (b).)  The McClymonds filed an Answer to the Complaint, denying Allstate's allegations that the complaints in the underlying action do not state a claim against them which is potentially covered under the Policy.   The McClymonds also raised several defenses, including that the Underlying Amended Complaint avers that the Krauchaks' injuries were caused by the negligence and carelessness of the McClymonds, and their averments in their answer to the complaint and amended complaint in the underlying action that they acted in self-defense and in the defense of others.  (Fourth, Fifth, Sixth, & Eighth Defenses, ¶¶ 6-8, 10 to Answer (citing Answer, New Matter and New Matter Pursuant to Pa.R.Civ.P. 2252(d) in underlying action (Ex. 1 to Answer).)  Subsequently, Allstate and the McClymonds separately filed motions for judgment on the pleadings.  These motions have been fully briefed and are now ripe for disposition.

**E.    Discussion**

Allstate's argument in support of its motion for judgment on the pleadings is two-fold:

(1) Coverage under the Policy was not triggered as none of the facts alleged in the complaint or amended complaint in the underlying action could possibly qualify as an accident, and therefore, the injuries sustained by the Krauchaks were not caused by an "occurrence" under the Policy;  and (2) the factual allegations in the underlying action show that McClymonds' conduct was intentional and therefore, the intended harm exclusion applies to preclude coverage.  On the other hand, the McClymonds argue, in support of their own motion for judgment on the pleadings and in response to Allstate's motion, that several of the counts in the amended complaint in the underlying action are based on theories of negligence, and since the Policy clearly provides coverage for negligent acts, Allstate owes it a duty to defend.  The McClymonds further argue that they have asserted a defense of self-defense in the underlying action, and as of the time the pending motions were filed, discovery in the underlying action had not yet commenced.  In response, Allstate contends that the complaints in the underlying action do not include any factual allegations to support a negligence claim, but rather, contain only conclusory allegations or legal conclusions of negligence.   In addition, Allstate responds that Defendants' defense of self-defense in the underlying action does not preclude application of the intended harm exclusion.

A federal court exercising diversity jurisdiction is required to apply the substantive law of the forum state. *Covington v. Continental Tire, Inc.,* 381 F.3d 216, 218 (3d Cir. 2004); *Highlands Ins. Co. v. Hobbs Group, LLC,* 373 F.3d 347, 351 (3d Cir. 2004) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938) (other citation omitted).  Thus, Pennsylvania law governs the legal issues presented here.

In Pennsylvania, the law with regard to the interpretation of an insurance contract is well established.  Generally, the task of interpreting an insurance contract is for the court rather than the

jury. *Standard Venetian Blind Co. v. Am. Empire Ins. Co.,* 469 A.2d 563, 566 (Pa. 1983). The Supreme Court in *Standard Venetian* opined on this task as follows:

> The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

*Id.* "A provision of an insurance contract is 'ambiguous' if reasonably intelligent people could differ as to its meaning." *Pa. Nat'l Mut. Cas. Ins. Co. v. Traveler's Ins. Co.,* 592 A.2d 51, 54 (Pa.Super. 1991).

Initially, in a declaratory judgment action involving an insurance coverage dispute, the court must determine the scope of coverage under the applicable insurance policy. *Gen. Accident Ins. Co. v. Allen,* 692 A.2d 1089, 1095 (Pa. 1997). After making this determination, the court then examines the complaint in the underlying action to ascertain whether coverage is triggered. *Id.* An insurance company's duty to defend an action against its insured is determined solely by the allegations in the underlying complaint. *Id.* at 1094 (citation omitted); *see also Erie Ins. Exch. v. Fidler,* 808 A.2d 587, 590 (Pa.Super. 2002) (citing *United Serv. Auto. Ass'n v. Elitzky,* 517 A.2d 982, 985 (Pa. Super. 1986)). However, the particular cause of action pled in the underlying complaint is not dispositive of whether an insurer's duty to defend is triggered. Rather, the Court must look to the factual allegations contained in the underlying complaint. *Fidler,* 808 A.2d at 590 (citing *Mut. Benefit Ins. Co. v. Haver,* 725 A.2d 743, 745 (Pa. 1999)); *Scopel v. Donegal Mut. Ins. Co.,* 698 A.2d 602, 605 (Pa.Super. 1997) (citations omitted). To the extent that the underlying complaint alleges an injury that actually or potentially falls within the scope of coverage in the insurance policy, the insurer is

9

required to defend its insured until the claim is confined to a recovery that is outside the scope of the policy. *Fidler,* 808 A.2d at 590 (citing *Germantown Ins. Co. v. Martin,* 595 A.2d 1172, 1175 (Pa. Super. 1991)); *Scopel,* 698 A.2d at 605 (citation omitted).   A court's interpretation of the insurance policy in making this determination involves a question of law. *Id.* (citing *Germantown Ins. Co.,* 595 A.2d at 1174-75).

With these precepts in mind, the Court turns now to Allstates' bases for its request for declaratory relief that it does not owe the McClymonds a duty to indemnify or a duty to defend.

### 1.     Whether the Injuries to the Krauchaks Were the Result of an "Occurrence" as Defined Under the Policy

To resolve this issue, the Court is required to determine if the acts that allegedly caused the Krauchak's injuries meet the definition of an "occurrence" under the Policy.  Under the Policy, an "occurrence" is defined as an "accident."  The term "accident" is not defined under the Policy, in which case, the Court is required to employ the common, ordinary meaning of the term. *Elitzky,* 517 A.2d at 991 (citing *Erie Ins. Exchange v. Transamerica Ins. Co.,* 507 A.2d 389, 392 (Pa. Super. 1986)) ("[W]ords in an insurance policy are to be given their common, ordinary meaning.").   The *Oxford English Dictionary* (2d ed. 1989) defines "accident" as:

> **a.** An occurrence, incident, event. *Obs.* **b.** Anything that happens without foresight or expectation; an unusual event, which proceeds from some unknown cause, or is an unusual effect of a known cause; a casualty, a contingency.

Thus, it is clear that under Pennsylvania law, injuries resulting from the intentional acts of the insured do not fall within the meaning of the term "accident."  *See Gene's Rest. v. Nationwide Ins. Co.,* 548 A.2d 246, 247 (Pa. 1988) (policy provided coverage for an "occurrence" which was defined as an "accident," and therefore, no coverage existed for alleged willful and malicious assault, an

intentional tort); *Fidler,* 808 A.2d at 590 (insured's physical assault on a fellow junior high school student constituted intentional conduct as a matter of law); *Viola v. Fireman's Fund Ins. Co.,* 965 F.Supp. 654, 664 (E.D.Pa. 1997) (applying Pennsylvania law, found no coverage existed as plaintiff's injuries were not caused by insured's negligence or by accident, but rather, by intentional physical assault and battery of plaintiff).[4]

A review of the original complaint in the underlying action clearly shows that the Krauchaks allege that the injuries they sustained were not caused by an accident, but rather, were caused by the intentional conduct of the McClymonds, to wit:

> Alex Krauchak "was viciously, and without warning, attacked by the . . . McClymonds"
>
> "Allen McClymonds [] provoked [Alex Krauchak] into a pushing and shov[ing] match which escalated into punches being thrown."
>
> While Allen McClymonds and Alex Krauchak were engaged on the ground, Selena McClymonds "jumped on the back of [Alex Krauchak] and started pulling his hair."

---

[4]In this case, the complaints in the underlying action aver only intentional conduct by the *insureds*, Allen and Selena McClymonds, and negligent conduct by third parties who are not insureds under the Policy, which allegedly caused the Krauchaks' injuries. Therefore, the case at bar is distinguishable from the situation where the underlying complaint alleges intentional conduct by third parties but alleges only negligent conduct on the part of the insureds, both of which allegedly caused the injuries to the complainants in the underlying action. In the latter situation, both the Pennsylvania Superior Court and the United States Court of Appeals for the Third Circuit have predicted that the Pennsylvania Supreme Court would find the insurer owed its insured a duty to defend. *See Donegal Mut. Ins. Co. v Baumhammers,* 893 A.2d 797, 810 (Pa. Super. 2006) (en banc), *appeal granted,* 908 A.2d 265 (Pa. 2006) ("negligence [of an insured] leading to intentional acts [of third parties] may nevertheless be considered an 'accident,' and thus an 'occurrence' where so defined."); *Nationwide Mut. Fire Ins. Co. v. Pipher,* 140 F.3d 222, 225-26 (3d Cir. 1998) (applying Pennsylvania law; "it is the intentional conduct of the *insured* which precludes coverage, not the acts of third parties."). Accordingly, the case at bar is more closely analogous to *Gene's Restaurant, Fidler,* and *Viola, supra,* and therefore, those cases control the outcome here.

> "While Selena McClymonds [] was pulling [Alex Krauchak's] hair, . . . Allan McClymonds disengaged from [Alex Krauchak], stood up, and kick (sic) [Alex Krauchak] in the head at least two times with a steel towed boot, rendering him unconscious."

> After having rendered Alex Krauchak unconscious, while still in that state, the McClymonds "continued there (sic) assault on [Alex Krauchak] thereby sending him to the trauma unit of the hospital."

(Under.  Compl. ¶¶ 7, 9-13.)   In addition, in Counts I and III of the original complaint in the underlying action, the Krauchaks aver that the McClymonds physically assaulted Alex Krauchak, and that as a result of said intentional assault, Alex Krauchak sustained serious physical and mental injuries.  (Underlying Compl. ¶ ¶ 17, 19, 34, 36.)  The Krauchaks also seek an award of punitive damages for the McClymonds' intentional, malicious and outrageous actions.  (Under. Compl. ¶¶ 22, 39.)  In Counts II and IV of the original complaint, the Krauchaks aver that the McClymonds intentionally committed battery upon Alex Krauchak by engaging in the conduct alleged in paragraphs 7, and 9 through13 of the original complaint; acted with intent to cause offensive contact to Alex Krauchak's body and cause injuries; and as result of said batteries, Alex Krauchak sustained serious physical and mental injuries.  (Under. Compl. ¶ ¶ 25-26, 28, 42-43, 45.)  The Krauchaks also seek an award of punitive damages for the McClymonds' intentional, malicious and outrageous actions constituting a battery.  (Under. Compl. ¶ ¶ 31, 48.)

Thus, based on the allegations of fact in the original complaint, the Court is compelled to find that the conduct of the McClymonds, which allegedly cause the injuries to the Krauchaks, was intentional as a matter of law.  Therefore, the injuries sustained by the Krauchaks were not the result of an accident.  Accordingly, coverage does not exist under the Policy since there was no "occurrence."

The Court's conclusion in this regard is not altered by the Krauchaks' subsequent filing of an amended complaint in the underlying action.[5]  When the Krauchaks filed their amended complaint, they added Counts V and VI, "Negligent and Intentional Misconduct," against Allen McClymonds and Selena McClymonds, respectively.  Nonetheless, the Krauchaks did not add any new factual allegations in support of their negligence claim, nor did they remove or change any of the factual allegations set forth in the original complaint regarding the intentional assault and battery of the McClymonds.  Indeed, the amended complaint incorporates by reference the factual allegations set forth in the original complaint, and those allegations of fact sound solely of intentional conduct.  Merely adding a count entitled "Negligence" to the complaint, without adding supporting facts that could reasonably state a claim for negligence under the Policy, will not trigger the insurance company's duty to defend.  *Federal Ins. Co. v. Potamkin,* 961 F.Supp. 109, 111-12 (E.D.Pa. 1997) (citing *Britamco Underwriters, Inc. v. Emerald Abstract Co., Inc.,* 855 F.Supp. 793, 798 E.D.Pa. 1994)); *Wilson v. Maryland Cas. Co.,* 105 A.2d 304, 307 (Pa. 1954) ("the cause of action against the insured, being for wilful assault and battery committed by him, could *not* be changed by amendment into a totally different cause of action based on negligence so as to bring it within the terms of the policy."); *see also Fidler,* 808 A.2d at 590 ("the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered.  Instead it is necessary to look at the factual allegations contained in the complaint.") (citing *Haver,* 725 A.2d at 745); *Scopel,* 698 A.2d at 605 (same).  "To allow the manner in which the complainant frames

---

[5]The amended complaint in the underlying action also added claims against J's Bar and the owners of the bar, sounding in negligence.  However, neither J's Bar nor its owners are insureds under the Policy issued by Allstate which is at issue in this declaratory judgment action.

the request for redress to control in a [declaratory judgment action to determine the insurer's obligations] would encourage litigation through the use of artful pleadings designed to avoid exclusions in liability insurance policies." *Haver,* 725 A.2d at 745.

Nonetheless, the McClymonds argue that clearly Counts V and VI rest, at least in part, on a negligence theory and aver facts that support such a theory. In particular, the McClymonds point to the following allegation in paragraphs 51 and 58 of the amended complaint:

> The injuries and damages herein set forth suffered by Alex Wayne Krauchak were caused as a direct and proximate result of the negligence, carelessness, recklessness, willful and wanton misconduct of Allen [and Selena] McClymonds in all of the following particulars:
>
> (c)     by failing to recognize the right and safety of Alex Wayne Krauchak, thereby creating a high degree of risk of physical harm to Alex Wayne Krauchak at the time aforesaid.

(Under. Am. Compl. ¶¶ 51, 58.) The Court disagrees with the McClymonds. Although Counts V and VI aver a failure to recognize the right and safety of Alex Krauchak, they fail to allege an essential element of a negligence claim–a legally recognized duty of care–in the first instance.[6] Equally important is what the McClymonds fail to mention in their argument: the two other examples of conduct alleged by the Krauchaks in support of their "negligence" claim: "(a) . . . intentionally striking Alex Wayne Krauchak; [and] (b) . . . assisting, encouraging and/or conspiring with another person to strike and/or harm Alex Wayne Krauchak." (*Id.*) Again, both of these

_____

[6]To establish a viable negligence claim, the plaintiff must allege in the complaint "[a] duty, or obligation, recognized by law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks. . . ." *Ney v. Axelrod,* 723 A.2d 719, 721 (Pa. Super. 1999) (citations omitted).

alleged actions involve intentional not negligent or accidental conduct.[7]  Moreover, "[i]n order for a claim of civil conspiracy to proceed, a plaintiff must 'allege the existence of all elements necessary to such a cause of action.'" *Lackner,* 892 A.2d at 34 (quoting *Rutherfoord v. Presbyterian-Univ. Hosp.,* 612 A.2d 500, 508 (Pa. Super. 1992)).  The amended complaint fails to allege any of the elements of a civil conspiracy claim.  As damages, Counts V and VI also request punitive damages, another indication that the injuries were allegedly caused by the intentional, not negligent, conduct of the Insureds.

The McClymonds' reliance on *State Farm Fire & Cas. Co. v. Butchin,* No. CIV. A. 95-2612, 1996 WL 108730 (E.D.Pa. Mar. 12, 1996), in support of their argument, is misplaced.[8]  *Butchin* is distinguishable on its facts.  First, in *Butchin,* the insured and insurance company agreed that the incident for which the insured was claiming coverage constituted an occurrence under the policy. *Id.* at *1.  Here, to the contrary, the parties dispute that there was an occurrence under Allstate's Policy, and indeed, this Court has found that there was no occurrence under the Policy based on the factual allegations in the complaints in the underlying case.  Second, the insurance policy in *Butchin* contained an exception to the intended harm exclusion which is not contained in the Allstate Policy: "This exclusion does not apply to bodily injury or property damage resulting from the use of

---

[7]Even if the amended complaint contained factual allegations to potentially establish a claim of civil conspiracy, which it does not, an essential element of a conspiracy claim is "proof of malice, *i.e.,* an intent to injure."  *Lackner v. Glosser,* 892 A.2d 21, 35 (Pa.Super. 2006) (citing *Thompson Coal Co. v. Pike Coal Co.,* 472 A.2d 466, 472 (Pa. 1979)).  Thus, a civil conspiracy claim more closely resembles an intentional tort, not negligent conduct.

[8]Also, it goes without saying that a district judge is not bound by a decision of another judge from the same district court.  *Threadgill v. Armstrong World Indus., Inc.,* 928 F.2d 1366, 1371 (3d Cir. 1991) (doctrine of stare decisis does not compel one district court judge to follow the decision of another judge in the same district).

reasonable force to protect persons or property . . .." *Id.* at *2 (quoting State Farm policy). Thus, the policy in *Butchin* appears to provide coverage for intentional acts if taken in self-defense. The Allstate Policy, on the other hand, contains no such exception to the intended harm exclusion. Finally, the decision in *Butchin* does not indicate what facts were alleged in support of the conclusory allegation that the incident resulted solely from the intentional, careless, negligent, and/or reckless acts of the insured, and attempts to distinguish case law holding that conclusory allegations of negligence alone are insufficient to support a duty to defend by looking at evidence beyond the underlying complaint to confirm that there was no evidence of negligence or self-defense in those cases. *Id.* at *3. The court's distinction however, ignores established precedent which holds that the court must consider only the allegations in the underlying complaint when determining whether a duty to defend exists. Accordingly, *Butchin* is neither dispositive nor persuasive.[9]

Accordingly, other than setting forth conclusory allegations and/or conclusions of law, the amended complaint  contains no supporting facts to show that the physical and/or mental injuries sustained by Alex Krauchak could potentially be the result of an accident or negligence.  Thus, despite the addition of the negligence counts against Allen and Selena McClymonds, the amended

---

[9]The other cases upon which the McClymonds rely are likewise distinguishable, and therefore, do not support their argument. *Britamco Underwriters, Inc. v. Weiner,* 636 A.2d 649, 652 (Pa.Super. 1994) (insured bar sought coverage under general liability policy; complaint included allegations that bar failed to provide adequate protection for business invitees, hired or otherwise employed an individual with propensities for doing violence, and thus stated a claim that potentially came within the coverage of the policy); *Little v. MGIC Indem. Corp.,* 649 F.Supp 1460, 1467 (W.D.Pa. 1986) (D&O insurance policy; loan officer of bank was entitled to costs of defense because based on the underlying facts of case, trier of fact could plausibly find that loan officer was negligent); *Cadwallader v. New Amsterdam Cas. Co.,* 152 A.2d 484,  487-88 (Pa. 1959) (allegations in complaint against insured attorney sounded in negligence as well as in fraud and conspiracy, and therefore, the insurer was required to provide a defense under its professional liability policy).

complaint does not reasonably state a claim covered by the Policy because none of the facts alleged can be construed as negligence.

Likewise, Counts VII and VIII of the amended complaint in the underlying action also speak of intentional conduct.  Counts VII and VIII are entitled "Intention Infliction of Emotional Distress" and are brought against Allen McClymonds and Selena McClymonds, respectively.  The amended complaint does not include any new factual allegations in support of the claims for intentional infliction of emotional distress, but rather, merely incorporates the factual allegations set forth in the preceding paragraphs, which this Court has determined sound in intentional conduct.

Finally, the McClymonds' attempt to bring the underlying action within the coverage of the Policy by arguing self-defense is to no avail.  In their answer to the amended complaint in the underlying action, the McClymonds assert that they were acting in self-defense when they were engaged with Alex Krauchak.  Consequently, the McClymonds contend that this raises the possibility that their actions were not intentional, and therefore, the injuries to the Krauchaks are potentially covered by the Policy.  As aptly noted by our sister court in the Eastern District of Pennsylvania, the Pennsylvania Supreme Court has not yet addressed whether a claim of self-defense triggers a duty to defend and indemnify; nonetheless, the Pennsylvania Superior Court has determined that an assertion of self-defense does not bring an action alleging an intentional tort within the coverage of a policy with an "expected or intended" harm exclusion.  *Allstate Ins. Co. v. Kenney,* No. Civ. A. 02-CV-02387, 2003 WL 22316776, * 4 (E.D.Pa. Oct. 8, 2003) (citing *Donegal Mut. Ins. Co. v. Ferrara,* 552 A.2d 699 (Pa. Super. 1989)); *see also Viola,* 965 F.Supp. 665-66 (rejecting allegation of self-defense in complaint against insurance company and holding that the wording of the underlying personal injury complaint determined whether the insurer had a duty

to defend and/or indemnify its insured). As the district court in *Kenney* further observed, "this ruling appears to be consistent with the rule that the duty to defend and indemnify is determined by the factual allegations in the underlying complaint." *Id.* This Court agrees with its sister court in *Kenney* and likewise finds that under Pennsylvania law, the McClymonds assertion of self-defense does not bring the underlying action, which sounds solely in intentional conduct, within the coverage of the Policy.

Accordingly, because the Court has found that the factual allegations contained in the complaints in the underlying action aver only intentional conduct by the *insureds*, Allen and Selena McClymonds, which allegedly caused the Krauchaks' injuries, there was no "occurrence" as defined under the Policy. Therefore, as coverage does not exist under the Policy, Allstate does not owe the McClymonds either a duty to defend or a duty to indemnify.[10]

### 2. Whether the Intended Harm Exclusion Applies to Bar Coverage

The exclusion invoked by Allstate to deny a duty to defend and indemnify the McClymonds provides in pertinent part that the Policy does not cover any bodily injury "intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person." (Ex. A to Compl., p. 21.) This type of exclusion is commonly referred to as an "intended harm exclusion." Intended harm exclusions similar to that in Allstate's Policy have been held to exclude coverage "where the insured 'intended to cause a harm of the same general type as

---

[10]An insurer's duty to defend is more encompassing than the duty to indemnify. *Scopel,* 698 A.2d at 605 (citations omitted). Thus, once the court has determined that the insurer has no duty to defend the insured in the underlying action, the duty to indemnify is foreclosed. *Id.* Therefore, since the Court has found Allstate has no duty to defend the McClymonds, it cannot be required to indemnify its insureds.

that which did occur.'" *Fidler,* 808 A.2d at 589 (quoting *Elitzky,* 517 A.2d at 987). "An insured intends an injury if he desires to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result." *Elitzky,* 517 A.2d at 982. However, the intended harm exclusion in the case at bar actually includes some additional language, which appears to take into consideration the Pennsylvania Superior Court's decision in *Elitzky*.[11]   For example, the Allstate Policy specifically provides that the intended harm exclusion applies: (1) even if the insured lacks the mental capacity to govern his or her conduct; (2) even if the bodily injury is of a different kind or degree than that intended or reasonably expected; or (3) regardless of whether or not the insured is actually charged with or convicted of a crime. (Ex. A to Compl., p. 21.)

In determining an insured's intent, the courts in Pennsylvania apply a subjective standard. *Wiley v. State Farm Fire & Cas. Co.,* 995 F.2d 457, 460-61 (3d Cir. 1993) (citing *Eisenman v. Hornberger,* 438 Pa. 46, 49, 264 A.2d 673, 675 (Pa. 1970); and *Elitsky,* 517 A.2d at 987, 989); *see also USX Corp. v. Adriatic Ins. Co.,* 99 F.Supp.2d 593, 630 (W.D.Pa. 2000), *aff'd* 345 F.3d 190 (3d Cir. 2003) (citing *Elitzky,* 517 A.2d at 990). However, in certain circumstances, this intent may be

---

[11]In *Elitzky,* the intended harm exclusion provided: Coverage for damages because of bodily injury and property damage "do[es] not apply to bodily injury or property damage which is expected or intended by the insured." 517 A.2d at 984-85. The Pennsylvania Superior Court held that an intended harm exclusion is ambiguous as a matter of law and therefore, must be construed against the insurer. *Id.* at 989. In so holding, the Superior Court rejected the view that an intended or expected harm exclusion clause requires "specific intent to cause the precise injury which did occur." *Id.* at 988 (citations omitted). Instead, the Superior Court opined that such an exclusion will apply only where the insured "inten[ded] to cause a harm of the same general type as that which did occur." *Id.* at 989. An insured intends to cause a harm if he either desired to cause the consequences of his act or acted knowing that such consequences were substantially certain to result. *Id.* In making this determination, it is critical to distinguish intent from recklessness or simple negligence, as neither negligence nor recklessness will preclude coverage under the intended harm exclusion. *Id.*; *Fidler,* 808 A.2d at 590.

presumed.  For example, certain intentional torts, such as assault and battery, have been found to demonstrate an intent to produce a general type of harm as a matter of law.  *Fidler,* 808 A.2d at 590-91 (intended harm exclusion applied to bar coverage where insured allegedly threw a fellow junior high school student against a wall and into a desk since court concluded insured's conduct was intentional as a matter of law); *Nationwide Mut. Ins. Co. v. Yaeger,* No. Civ. A. 93-3024, 1994 WL 447405, *2 (E.D.Pa. Aug. 19, 1994), *aff'd without opin.* 60 F.3d 816 (3d Cir. 1995) (although underlying complaint alleged the insured negligently, carelessly and/or recklessly struck victim with a stick causing eye injury, exclusion applied because complaint failed to state a *prima facie* claim of negligence and undisputed facts indicated only an intention tort); *Germantown Ins. Co.,* 595 A.2d at 1175 (injuries to victims of a shooting spree in their home were deemed intentional where there was no evidence that the shooting was negligent or accidental and therefore the exclusion applied[12]); *Ferrara,* 552 A.2d at 701-02  (where complaint alleged that insured "willfully and maliciously kick[ed police officer] in the groin area, contributing or causing the injuries" specified in the complaint, the insured acted knowing the consequences of her act, *i.e.,* damage to the police officer's genitalia, which would be substantially certain to result from the insured's act); *Humphreys v. Niagara Fire Ins. Co.,* 590 A.2d 1267, 1271-72 (Pa. Super. 1991) (court held allegations in complaint charging violations of RICO and antitrust laws fell within exclusion of professional liability policy for intentionally fraudulent acts).

---

[12]In *Germantown,* the Superior Court held that the injuries caused when the insured fired shots at the victims during a shooting spree were expected or intended and therefore were not covered under the shooter's homeowner's policy.  The appellate court reached this conclusion based on evidence to the effect that the insured was proficient with weapons, "chose an automatic handgun, brought extra ammunition, drove to the right house, approached without incident and shot repeatedly each person he saw."  595 A.2d at 1175.

In the instant matter, the underlying complaints allege that the McClymonds intentionally and viciously assaulted, battered, attacked, pushed, shoved, threw punches, jumped on Alex Krauchak's back, pulled his hair, kicked him in the head at least twice with a steel towed boot rendering him unconscious, and continued to assault him after he was unconscious. The Court cannot imagine a more clear cut case of intentional conduct than the one presented by the underlying complaints here. Under the above cited precedent, this conduct is deemed intentional as a matter of law and therefore sufficient to fall within the intended harm exclusion. It is also equally clear that the McClymonds committed the physical battery upon Alex Krauchak knowing that bodily injuries of the type sustained were substantially certain to result. Therefore, their conduct falls within the intended harm exclusion of the Policy and thus, precludes coverage under the Policy.

In light of the above findings, the Court concludes, as a matter of law, that the intended harm exclusion in Allstate's Policy applies to bar coverage, and therefore, Allstate does not owe the McClymonds either a duty to defend or a duty to indemnity in the underlying action.[13]

---

[13]Finally, to avoid judgment against them, the McClymonds argue that it is premature at this juncture for the Court to decide whether Allstate has a duty to defend, as discovery has not yet taken place in the underlying action. Although some time has passed since the filing of the motion for judgment on the pleadings and thus the possibility exists that some discovery has occurred, the McClymonds' argument lacks merit as the law in Pennsylvania is clear that the court must only consider the allegations in the complaint in the underlying action in determining whether an insurer has a duty to defend. *Fidler,* 808 A.2d at 591 (citing *Haver,* 725 A.2d 747) (holding deposition testimony by insured that he did not intend to harm plaintiff was not considered in deciding whether allegations triggered coverage, and therefore, did not create an issue of fact regarding the insured's intent); *Scopel,* 698 A.2d at 607 ("reject[ing insured]'s argument that, in considering whether an insurer's duty to defend . . . has been triggered, consideration may be given to factual averments contained in discovery evidence but not reflected in the complaint itself."). Thus, if the complainants in the underlying litigation, *i.e.,* the Krauchaks, subsequently discover facts that support a claim that may potentially be covered by the Policy, then they may file an amended complaint setting forth these newly discovered facts, at which time the insurer, Allstate, should re-examine its obligations under the Policy. *Scopel,* 698 A.2d 606 (better reasoned approach is to require a plaintiff asserting a new theory of liability

III.   **CONCLUSION**

For the reasons set forth above, it is recommended that the Motion for Judgment on the Pleadings filed by Plaintiff, Allstate Insurance Company (Doc. No. 11), be granted, and the Motion for Judgment on the Pleadings filed by Defendants, Allen D. McClymonds and Selena McClymonds (Doc. No. 13), be denied.

In accordance with the Magistrates Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates Judges, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.  Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Dated: July 13, 2007                     By the Court:

                                         Lisa Pupo Lenihan
                                         U.S. Magistrate Judge

cc:      Honorable David Stewart Cercone
         United States District Judge

         All Counsel of Record
         *Via Electronic Mail*

---

premised upon discovery evidence to file an amended complaint reflecting those factual averments, and after reviewing the amended complaint, the insurer must decide whether the additional allegations of fact require it to defend the insured.)